# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ANTHONY F. WAINWRIGHT,

        Plaintiff,

v.                                         Case No. 3:25-cv-607-WWB-PDB

RON DESANTIS, et al.,

        Defendants.

_____

## <u>ORDER</u>

### I. Status

Plaintiff Anthony F. Wainwright, a Florida death row inmate who is scheduled to be executed on Tuesday, June 10, 2025, initiated this case, with help from court-appointed counsel, by filing a Complaint under 42 U.S.C. § 1983 (Doc. 1), a memorandum of law (Doc. 2), and exhibits (Doc. 3). He is proceeding on an Amended Complaint. (Doc. 12). He sues five Defendants in their official capacities: Governor Ron DeSantis; Attorney General James Uthmeier; Secretary of the Florida Department of Corrections (**"FDOC"**) Ricky D. Dixon; Warden David Allen; and the Honorable Carlos G. Muñiz. (*Id.* at 2-3).

Before the Court are Defendants' Amended Motion to Dismiss, in which they argue that Plaintiff fails to state a claim upon which relief may be granted (Doc. 15), and Plaintiffs' Emergency Motion for a Stay of Execution (Doc. 4). Plaintiff filed a response to Defendants' Amended Motion to Dismiss (Doc. 17); Defendants responded to Plaintiff's Motion for Stay of Execution (Doc. 16); and with the Court's leave, Plaintiff filed a reply to

Defendants' response to the Motion for Stay of Execution (Doc. 22). The motions and this matter are ripe for review.

## II. Procedural History and Plaintiff's Allegations

In 1995, a jury found Plaintiff guilty of first degree murder, kidnapping, armed sexual battery, and armed battery. (Doc. 3 at 43). By a 12-0 vote, the jury recommended that Plaintiff be sentenced to death, and the trial court followed that recommendation, sentencing Plaintiff to death. (*Id.*). The Florida Supreme Court affirmed Plaintiff's convictions and sentence in November 1997. *See Wainwright v. State*, 704 So. 2d 511, 512 (Fla. 1997). In 2014, during Plaintiff's successive Florida Rule of Criminal Procedure 3.851 proceedings in state court, the trial court appointed Baya Harrison, an attorney from the capital collateral registry, as Plaintiff's postconviction counsel. (Doc. 12 at 4); *see also State v. Wainwright*, No. 1994-CF-000150 (Fla. 3d Cir. Ct.).[1] Harrison has remained Plaintiff's state court postconviction counsel since his 2014 appointment. Plaintiff alleges he has made "several unsuccessful attempts . . . over the following eleven years to have Harrison removed as his appointed registry counsel," but he does not explain the circumstances of those attempts. (Doc. 12 at 4-5). In June 2018, this Court appointed the Capital Habeas Unit of the Office of the Federal Public Defender for the Northern District of Florida ("**CHU**") as Plaintiff's federal habeas counsel. *See Wainwright v. Sec'y, Dept. of Corr.*, No. 3:05-cv-00276-TJC (Doc. 47). The CHU has remained Plaintiff's federal habeas counsel since its appointment.

---

[1] The Court takes judicial notice of Plaintiff's state court docket. *See McDowell Bey v. Vega*, 588 F. App'x 923, 927 (11th Cir. 2014) (holding that district court did not err in taking judicial notice of the plaintiff's state court docket when dismissing § 1983 action); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice.").

On May 9, 2025, Defendant DeSantis signed Plaintiff's death warrant and FDOC scheduled his execution for June 10, 2025.  (Doc. 12 at 4).  That same day, Defendant Muñiz issued an expedited briefing schedule for Plaintiff's final successive state court postconviction proceedings, (*id.*; *see also* Doc. 3 at 4-5), and FDOC officials transported Plaintiff from Union Correctional Institution to Florida State Prison ("**FSP**") where officials placed him on "death watch," which included the confiscation of his tablet and restriction of his visitation and phone privileges.  (Doc. 12 at 4).  The day DeSantis signed the warrant, Harrison and CHU's Linda McDermott communicated amicably and exchanged emails about working together on Plaintiff's death warrant litigation.  (Doc. 12 at 5; Doc. 3 at 10-12).  Harrison, McDermott, and CHU's Katherine Blair discussed by phone potential claims to raise on Plaintiff's behalf.  (Doc. 12 at 5-6).  According to McDermott's declaration, during the phone call, Harrison mentioned pursuing an *Erlinger*[2] claim, and CHU attorneys suggested pursuing a petition for writ of habeas corpus in the Florida Supreme Court, to which Harrison said "sound[ed] good."  (Doc. 3 at 15).  On May 10, 2025, Harrison sent Plaintiff a letter advising him about the death warrant, explaining that he was consulting with federal postconviction counsel about potential post-warrant claims to pursue, and indicating that he could not visit Plaintiff in prison due to time constraints.  (Doc. 12 at 6).  Harrison said he would try to call the prison to speak with Plaintiff but asked that Plaintiff try calling Harrison himself.  (*Id.*).  According to Plaintiff, Plaintiff did not receive Harrison's letter until ten days later, (*id.* at 6); he received no call from Harrison; and because he was on "death watch," Plaintiff was unable to make a phone call himself, (Doc. 2 at 16).

---

[2] *Erlinger v. United States*, 602 U.S. 821 (2024).

On May 11, 2025, without consulting Plaintiff, Harrison filed with the trial court a response to the state's proposed scheduling order, advising the trial court that no evidentiary hearing was needed for Plaintiff's forthcoming successive Rule 3.851 motion. (Doc. 12 at 6).  The trial court issued its scheduling order on May 12, 2025.  (*Id.*).  Also, without consulting Plaintiff, Harrison filed with the trial court a notice advising that Plaintiff did not seek more public records from Defendant Dixon or any other agency in preparation for his filing.  (Doc. 12 at 6-7).  On May 14, 2025, Harrison, on behalf of Plaintiff, filed with the trial court an eighth successive Rule 3.851 motion raising a single claim.  (*Id.*).  That same day, Terri L. Backhus, pro bono counsel for Plaintiff, filed with the trial court a second eighth successive Rule 3.851 motion raising two additional claims (a *Brady*[3] claim and an Eighth Amendment claim) and a motion for substitution of counsel.  (*Id.* at 7).  Plaintiff also filed a request for substitution of counsel, in which he advised that he consulted pro bono counsel Backhus and consented to the filing of her successive Rule 3.851 motion on his behalf.  (*Id.*).

The state objected to Backhus's motion for substitution and moved to strike her successive Rule 3.851 motion.  (*Id.*).  The trial court conducted an emergency hearing on the substitution request.  During the hearing, Harrison told the trial court he did not have faith in the claims that pro bono counsel Backhus sought to raise in her successive Rule 3.851 motion, referring to the claims as "gobbledygook," and that he did not believe he could successfully work with pro bono counsel Backhus.  (*Id.* at 7-8).  According to Plaintiff and McDermott, Harrison also "falsely represented that McDermott agreed to communicate with [Plaintiff] on his behalf."  (*Id.*; Doc. 3 at 16).  On behalf of the state,

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Defendant Uthmeier also protested pro bono counsel Backhus's involvement in any of Plaintiff's state court postconviction proceedings. (*Id.* at 8). The trial court granted in part the motion for substitution of counsel; granted the state's motion to strike pro bono counsel's successive Rule 3.851 motion; and explained that while Harrison "would retain all decision-making authority," Backhus could appear as second-chair counsel. (Doc. 3 at 40; Doc. 12 at 8).

Following the hearing, Harrison provided Backhus twenty minutes to review his amended eighth successive Rule 3.851 motion; but Backhus believed he did not provide her with enough time and shared her concerns about preserving Plaintiff's claims. (Doc. 12 at 8; Doc. 3 at 40). According to Backhus's declaration, Harrison responded that Backhus's "improper delay tactics never change," he would be filing the amended motion without her input, and she could "tell it to the judge." (Doc. 3 at 40). Harrison, on behalf of Plaintiff, then filed Plaintiff's amended eighth successive Rule 3.851 motion, which included Harrison's single claim (that the prior violent felony aggravator violated Plaintiff's Sixth Amendment right to trial by jury under *Erlinger*) and Backhus's two fact-intensive claims (newly discovered evidence of an Eighth Amendment claim and newly discovered evidence of a *Brady* violation). (Doc. 12 at 8; *see also Wainwright v. State*, No. SC2025-0708 (Fla. June 3, 2025)).[4] The day Harrison filed the amended Rule 3.851 motion, the trial court summarily denied all three claims. (Doc. 12 at 8).

---

[4] A copy of Plaintiff's amended eighth successive Rule 3.851 motion is available in the record on appeal found on the Florida Supreme Court's docket of Plaintiff's postconviction appeal. (*See Wainwright*, No. SC2025-0708). The Court takes judicial notice of Plaintiff's state court docket, including the record on appeal.

After the trial court denied Plaintiff's amended Rule 3.851 motion, Backhus advised Harrison that Plaintiff requested she file a state petition for writ of habeas corpus with the Florida Supreme Court.  (Doc. 12 at 8; Doc. 3 at 41).  Backhus offered to provide Harrison with a draft of the petition before filing it and explained that she hoped Harrison would sign on to the petition.  (Doc. 3 at 41).  In an email response, Harrison "stated that he was busy with the initial brief [for the appeal of the denial of the amended Rule 3.851 motion] and wanted nothing to do with the state habeas petition," (*id.*), and he "defended the actions of [Plaintiff's trial attorneys], whose conduct and representation were challenged in the state habeas," (Doc. 12 at 9).

Despite Harrison's opposition, on May 20, 2025, pro bono counsel Backhus, on behalf of Plaintiff, and with his consent, filed with the Florida Supreme Court Plaintiff's state petition for writ of habeas corpus seeking reconsideration of "its prior adversarial rulings . . . because . . . pervasive, systemic failures that occurred at every stage of his proceedings hindered his ability to obtain meaningful review of his constitutional claims, rendering his death sentence manifestly unjust."  (*Id.* at 9 n.4; *see also Wainwright v. Sec'y, Dep't of Corr.*, No. SC2025-0709 (Fla. 2025)).  Backhus also filed a notice of appearance, a motion for stay of execution, and Plaintiff's notarized authorization explaining he consented to Backhus representing him in the state habeas proceeding. (Doc. 12 at 9-10).  Defendant Muñiz issued an acknowledgment of new case and a scheduling order directing Defendant Dixon, through counsel Defendant Uthmeier, to file a response to the state habeas petition and providing a deadline for Plaintiff to reply.  (*Id.* at 10; Doc. 3 at 107).  Dixon, through Uthmeier, responded on May 27, 2025, arguing, *inter alia*, that the state habeas petition should be dismissed because Harrison is

Plaintiff's lead postconviction counsel.  (*Wainwright*, No. SC2025-0709).  That same day, Defendant Muñiz entered an order recognizing Harrison as lead postconviction counsel for Plaintiff, directing Harrison to file a notice adopting the state habeas petition and motion for stay of execution, and advising the parties that Harrison's failure to file an adoption would result in the striking of Plaintiff's filings.  (Doc. 12 at 11).

Harrison responded the next day, advising the Florida Supreme Court that he did not adopt the state habeas petition or the motion for stay of execution and explaining that he advised Backhus of his position as soon as he learned of the filings.  (*Id.*).  Considering Harrison's representations, Plaintiff, with help from pro bono counsel Backhus, filed with the Florida Supreme Court an emergency motion for rehearing raising due process and equal protection arguments including, *inter alia*, that the state should not be allowed to influence matters related to Plaintiff's postconviction counsel; Plaintiff was never afforded notice or an opportunity to respond to the state's argument about his choice of counsel; and because non-indigent defendants can proceed with counsel of their choice, Plaintiff has a right to enjoy the same benefit.  (*Wainwright*, No. SC2025-0709; Doc. 12 at 11). Relying on Rule 3.851(b)(4)-(6), Defendant Muñiz denied Plaintiff's emergency motion for rehearing and struck as unauthorized Plaintiff's state habeas petition and motion for stay of execution.  (*Wainwright*, No. SC2025-0709; Doc. 12 at 11).

The day Backhus filed Plaintiff's state court habeas petition, May 20, 2025, Plaintiff, with help from both Harrison and Backhus, appealed the trial court's summary denial of his amended eighth successive Rule 3.851 motion.  (*Id.* at 9).  On June 3, 2025, the Florida Supreme Court affirmed the trial court's denial.  (*Id.* at 12).  As to the Eighth Amendment claim (newly discovered evidence of Plaintiff's father's exposure to toxins

during the Vietnam War), the Florida Supreme Court addressed the trial court's denial on the merits and stated in a footnote:

> To the extent [Plaintiff] argues this additional information makes his sentence unconstitutional under the Eighth Amendment to the United States Constitution, we reject the claim. The argument is inadequately briefed and without merit. *See, e.g.*, *Hutchinson v. State*, 50 Fla. L. Weekly S71, 2025 WL 1198037 (Fla. Apr. 25, 2025), *cert. denied*, No. 24-7087, 2025 WL 1261217 (U.S. May 1, 2025).

(*Wainwright*, No. SC25-708 at 22 n.16.) Plaintiff now alleges that the Defendants' refusal to allow Backhus, Plaintiff's counsel of choice, to file his amended eighth successive Rule 3.851 motion and pursue his state habeas petition amounted to a federal due process and equal protection violation under the Fourteenth Amendment. (Doc. 12 at 13.)

Plaintiff sets forth his claims in both his Amended Complaint and supporting memorandum of law, but he presents them somewhat differently in each filing. The gravamen of his Amended Complaint is that he was denied due process and equal protection because he was denied the right to have his counsel of choice pursue a state habeas proceeding and provide a "sufficiently pled" Eighth Amendment claim in his amended eighth successive Rule 3.851 motion. He faults Defendant Muñiz for striking his chosen counsel's pro bono state habeas petition and doing so without affording him an opportunity to be heard on the choice-of-counsel issue. He faults Defendants Muñiz and Uthmeier for improperly "dictat[ing]" that Harrison be his sole postconviction counsel, thereby depriving him of the opportunity to present habeas claims of his choice and "sufficiently pled" claims to the Florida Supreme Court. He further alleges that the denial of his right to counsel of his choice violated his equal protection rights "because he is being treated differently than other non-capital litigants and any other non-indigent litigant who could have had retained counsel [to] represent them" and there was no rational basis

to treat him differently than other death sentenced individuals who were allowed choice of counsel (*id.* at 23).  Plaintiff does not allege the remaining Defendants (DeSantis, Dixon, and Allen) participated in the conduct that he claims amounts to a due process or equal protection violation—i.e., striking his state habeas petition, depriving him of his choice of counsel, or denying him the opportunity to raise sufficiently pled claims of his choice in state court.  Rather, he vaguely alleges those Defendants violated his rights by signing a death warrant with a short time period in which to be carried out (thirty-two days) and without providing him advance notice (DeSantis), and denying him access to the state habeas process because of the restrictive nature of his conditions of confinement on "death watch" (Dixon and Allen).

As relief, Plaintiff requests a preliminary injunction prohibiting Defendants from executing him until this Court has had an opportunity to consider his claims; declare that Defendants violated his federal constitutional due process and equal protection rights; and grant a permanent injunction barring Defendants from executing him until they provide him with a state court postconviction proceeding that comports with the United States Constitution.  (*Id.* at 24).

### III. Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the

9

non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV. Florida's Procedures for Appointment of Capital Postconviction Counsel

This case involves Florida's rules governing the required appointment of postconviction counsel for all capital defendants. Florida Rule of Criminal Procedure 3.851 provides:

> (1) Upon the issuance of the mandate affirming a judgment and sentence of death on direct appeal, the Supreme Court of Florida shall at the same time issue an order appointing the appropriate office of the Capital Collateral Regional Counsel or directing the trial court to immediately appoint counsel from the Registry of Attorneys maintained by the Justice Administrative Commission. The name of Registry Counsel shall be filed with the Supreme Court of Florida.
>
> . . . .
>
> (4) In every capital postconviction case, one lawyer shall be designated as lead counsel for the defendant. The lead counsel shall be the defendant's primary lawyer in all state court litigation. No lead counsel shall be permitted to appear for a limited purpose on behalf of a defendant in a capital postconviction proceeding.
>
> (5) After the filing of a notice of appearance, Capital Collateral Regional Counsel, Registry Counsel, or a private attorney shall represent the

defendant in the state courts until a judge allows withdrawal or until the sentence is reversed, reduced, or carried out, regardless of whether another attorney represents the defendant in a federal court.

(6) A defendant who has been sentenced to death may not represent himself or herself in a capital postconviction proceeding in state court. The only basis for a defendant who has been sentenced to death to seek to discharge postconviction counsel in state court must be pursuant to statute due to an actual conflict of interest. Upon a determination of an actual conflict of interest, conflict-free counsel must be appointed pursuant to statute.

Fla. R. Crim. P. 3.851(b)(1), (b)(4)-(6).

The appointed postconviction attorney "may designate another attorney to assist him or her if the designated attorney" is qualified under section 27.710, Florida Statutes. But counsel is prohibited from filing "repetitive or frivolous pleadings that are not supported by law or by the facts of the case." Fla. Stat. § 27.711(10).

## V. Defendants' Motion to Dismiss and Plaintiff's Response

Defendants argue that Plaintiff's Amended Complaint should be dismissed because (1) § 1983 bars Plaintiff's claim for injunctive relief against Defendant Muñiz because he was acting in his judicial capacity; (2) Plaintiff fails to state a due process claim upon which relief may be granted; and (3) Plaintiff fails to state an equal protection claim upon which relief may be granted. (*See generally* Doc. 15).

In his Response, Plaintiff argues that he has alleged specific facts relating to Defendants' preclusion of his chosen counsel that establish a violation of his due process and equal protection rights under the Fourteenth Amendment. (Doc. 17 at 4). According to Plaintiff, Florida has created a mandatory right to postconviction counsel for death-sentenced inmates, which includes a right to counsel of choice where it would pose no additional cost to the state, no delay, and no prejudice to opposing counsel. (*Id.* at 4-5).

According to Plaintiff, Defendants misconstrue Plaintiff's due process claim as being based on the Sixth Amendment and erroneously assume that Plaintiff is asserting that the state is required to provide him with chosen counsel. (*Id.* at 6). Instead, he maintains that his claims turn on his Fourteenth Amendment rights and whether he is entitled to representation by counsel that he has obtained on his own and who is willing to assist him at no cost to the state. (*Id.* at 6). He contends that he need not demonstrate prejudice, and he has alleged enough facts to overcome a motion to dismiss. (*Id.* at 7-9, 14). He also maintains that Rule 3.851 "ensure[s] counsel for capital postconviction defendants" and places no limitations on a defendant's ability to choose his counsel. (*Id.* at 11). Finally, Plaintiff argues that judicial immunity does not protect Defendant Muñiz from Plaintiff's claims for injunctive and declaratory relief. (*Id.* at 16-17).

## VI Analysis

### a. Defendants DeSantis, Uthmeier, Dixon, and Allen

Plaintiff sues all Defendants solely in their official capacities. (*See* Doc. 12 at 1-3). To state a claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. However, more is required when the plaintiff sues a "person" in his or her official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *See Graham*, 473 U.S. at 166. Plaintiff does not allege a policy or custom of the state of Florida, the Attorney General's Office, the FDOC,

or the Florida Supreme Court "played a part in the violation of federal law." (*See generally* Doc. Nos. 2, 12, 17). Instead, he alleges he was treated differently than other "similarly situated" litigants. (*See* Doc. 12 at 23). Thus, he fails to state a plausible claim for relief.

To the extent that Plaintiff intended to proceed against the named Defendants in their individual capacities, his claims still fail.[5] Before addressing the discrete allegations against Defendants DeSantis, Uthmeier, Dixon, and Allen, the Court notes that Plaintiff appears to proceed solely on a due process claim against these Defendants given he does not name them or mention them in his two-paragraph equal protection claim. (*Id.* at 23). To the extent that the equal protection claim was intended to apply to all Defendants, the Court separately addresses that claim later in this Order.

Plaintiff names DeSantis as a Defendant in his role as the Governor of Florida. (*Id.* at 1-2). DeSantis allegedly signed Plaintiff's death warrant "arbitrarily and without warning, setting an extremely restrictive 32-day deadline for all stages of briefing to be completed" and without providing Plaintiff advance notice that the warrant would be signed when it was. (*Id.* at 4, 16, 20). But Plaintiff neither alleges in his Amended Complaint, nor cites case law in his memorandum, suggesting that he has a liberty interest in how or when DeSantis, as Governor, issues or signs death warrants. (*See id.*; *see also* Doc. 2 at 23). Indeed, the Florida Supreme Court has specifically observed that there is "[no] authority holding that [a prisoner] must be provided notice before a death warrant is signed or that the Governor may not sign the death warrant of an individual whose death sentence is final and who has had the benefit of a clemency proceeding."

---

[5] Although Plaintiff is not proceeding pro se and thus is not entitled to liberal construction of his Amended Complaint, given Plaintiff is under an active death warrant, the Court will extend him the benefit of liberal construction for purposes of this review.

*Marek v. State*, 14 So. 3d 985, 998 (Fla. 2009) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998)).

Plaintiff sues Uthmeier in his role as the Attorney General of Florida who is tasked with representing the interests of the state of Florida and the FDOC; he sues Dixon in his role as Secretary of the FDOC who "supervises and ultimately enforces all regulations concerning [Plaintiff's] conditions of confinement"; and he sues Allen in his role as warden of FSP, which is "where [Plaintiff] is currently incarcerated."  (Doc. 12 at 2-3).

In conclusory fashion, Plaintiff alleges all Defendants "obstructed [his] ability to access the state habeas process entirely," refused "to permit [him] to proceed with the claims he wanted raised in his state postconviction proceedings," and "inappropriately influenced [Plaintiff's] ability to exercise choice of counsel."  (*See id.* at 16, 19, 22).  But he does not allege facts permitting the reasonable inference that Uthmeier, Dixon, or Allen engaged in conduct that allegedly violated his due process rights.  He merely lumps all Defendants together when setting forth his seemingly separate but substantively similar claims, without asserting separate factual allegations against Defendants Uthmeier, Dixon, or Allen that plausibly state a claim under § 1983.  (*See, e.g.*, *id.* at 16,19).

As to Defendants Dixon and Allen, Plaintiff merely complains that they "moved [him] to Death Watch at [FSP] . . . where he is now held in near total isolation" and confiscated his tablet, restricting his ability to communicate with anyone, including his lawyer.  (*Id.* at 21).  Such conduct does not suggest a due process violation because "the Due Process Clause . . . [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system," even when conditions at the new prison are "much more disagreeable" than at the former institution.  *Meachum v.*

*Fano*, 427 U.S. 215, 225 (1976); *see also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that placing a convicted prisoner in "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").  Notably, Plaintiff concedes that he is entitled to legal calls to the extent that they are "initiated by counsel."  (Doc. 12 at 4, 21).

As to the Attorney General, Plaintiff appears to complain that Defendant Uthmeier, through his employees, "misrepresent[ed]" to the Florida Supreme Court that because the postconviction court concluded Harrison was Plaintiff's lead counsel for purposes of his state court Rule 3.851 proceedings, the Florida Supreme Court was bound by the same ruling in his original habeas proceedings.  (*Id.* at 8, 16).  According to Plaintiff, Defendant Uthmeier "successfully dictated, despite being a party-opponent, that only Harrison [could] represent [Plaintiff] in his original proceedings."  (*Id.* at 16).  Plaintiff's characterization of Defendant Uthmeier's argument is incorrect.  Defendant Uthmeier primarily addressed Plaintiff's habeas claims on the merits.  (*Wainwright v. Sec'y, Dep't of Corr.*, No. SC25-0709 (Fla.)).  Only two pages of the forty-one-page brief were dedicated to an analysis of an apparent violation of Rule 3.851 providing that "[i]n every capital postconviction case, one lawyer shall be designated as lead counsel."  (*Id.* at 3 (quoting Fla. R. Crim. P. 3.851(b)(4))).

Defendant Uthmeier brought to the Florida Supreme Court's attention what appeared to be an unauthorized filing, and in doing so, he summarized the proceedings in the postconviction court—that Backhus moved to substitute herself as counsel of record for Plaintiff, and the trial court, after holding a hearing, granted the motion in part, permitting Backhus to be second-chair counsel, not lead counsel.  (*Id.* at 2-3).  Even if the

trial court's order did not bind the Florida Supreme Court on the issue of lead counsel designation, Defendant Uthmeier's zealous advocacy of his client cannot be described as a due process violation. Plaintiff did not file a similar motion to substitute counsel in the Florida Supreme Court. And when Defendant Uthmeier brought to the court's attention the fact that Backhus was not Plaintiff's lead counsel of record, the court afforded Plaintiff, through his lead appointed counsel, an opportunity to respond before striking the filing. Harrison responded and opted not to adopt Backhus's filings. Moreover, the Florida Supreme Court did not strike the petition until after Plaintiff, through Backhus, filed a motion for rehearing, which addressed his due process and equal protection concerns. Plaintiff's disagreement with his lead counsel's decision and with the Florida Supreme Court's ruling does not mean he was denied due process by the judge, the Attorney General, or the state.

As Plaintiff emphasizes in his Response, his claims revolve around the alleged denial of his right to have counsel of his choice pursue his post-warrant state habeas proceedings. (*See* Doc. 17 at 1, 6). Defendants DeSantis, Uthmeier, Dixon, and Allen had no role (other than through legitimate advocacy in Uthmeier's case) in the Florida Supreme Court's decision to strike Plaintiff's state habeas petition as unauthorized. For the reasons stated, Plaintiff fails to state a plausible claim against Defendants DeSantis, Uthmeier, Dixon, or Allen.

### b. Defendant Muñiz

The only Defendant who engaged in the conduct forming the basis of Plaintiff's claims was Defendant Muñiz, who acted in his official capacity as the Chief Justice of the Florida Supreme Court. For the same reasons the official capacity claims against the

other Defendants fail, so too does this claim.  Additionally, however, to the extent Plaintiff sues Defendant Muñiz in his individual capacity, it is well settled that "a judge enjoys absolute immunity [in a suit for damages under § 1983] where he or she had subject matter jurisdiction over the matter forming the basis for such liability."  *Dykes v. Hosemann*, 776 F.2d 942, 943 (11th Cir. 1985) (per curiam); *see also Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978); *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam).  As the Eleventh Circuit has observed, "[f]ew doctrines [are] more solidly established" than the doctrine of judicial immunity.  *Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020) (alteration in original).  Even when a judge arguably acts in error, maliciously, or in excess of his authority, he will "not be deprived of immunity." *Stump*, 435 U.S. at 356.  "[R]ather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Id.* at 356–57 (internal quotation marks and citation omitted).

Judicial immunity extends to claims brought under § 1983, even if a plaintiff seeks solely injunctive relief.  Indeed, in 1996, Congress amended § 1983 to expressly provide for judicial immunity in actions for injunctive relief.  That section provides in relevant part: "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983 (abrogating in part *Pulliam v. Allen*, 466 U.S. 522, 536-37 (1984), which held that judicial immunity did not extend to claims for injunctive relief).  And the Eleventh Circuit has recognized that to receive declaratory relief, "[a] plaintiff[] must establish that there was a violation, that there

is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin*, 225 F.3d at 1242

Plaintiff neither alleges that "a declaratory decree was violated or declaratory relief was unavailable" nor that there is an "absence of an adequate remedy at law." (*See generally* Doc. 12; *see also* Doc. 17 at 17). Moreover, the case he cites in his Response is inapposite and its legal principle misstated. (*See* Doc. 17 at 17 (citing *Sweet v. Chief Just. of Fla. Supreme Ct.*, No. 23-13025, 2025 WL 915740 (11th Cir. Mar. 26, 2025))). In *Sweet*, inmates sued the Chief Justice of the Florida Supreme Court in his official capacity, and the Eleventh Circuit affirmed the district court's dismissal of the action for lack of jurisdiction. *See* 2025 WL 915740, at *1. Contrary to Plaintiff's contention, the court did not "[find] that the Chief Justice of the Florida Supreme Court is not completely immune from a lawsuit." (*See* Doc. 17 at 17). Judicial immunity was not even addressed. Rather, the Eleventh Circuit in *Sweet* addressed solely issues of standing and sovereign immunity. *See generally id.* And upon review of the underlying district court order granting Judge Muñiz's motion to dismiss, the Court notes that a judicial immunity defense was not asserted or considered. (*See* Case No. 3:22-cv-574-TJC-LLL (M.D. Fla.)).

Given Defendant Muñiz is entitled to judicial immunity, and Plaintiff provides no valid argument to the contrary, the claims against Defendant Muñiz will be dismissed.

### c. Due Process and Equal Protection

Alternatively, Plaintiff's underlying due process and equal protection claims lack merit. According to Plaintiff, he has a state-created right to capital postconviction counsel; and thus Defendants' actions in safeguarding that state-created right must comport with

the federal Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Doc. 2 at 3-4).  Plaintiff, however, alleges that Defendants violated his federal due process and equal protection rights when they prohibited his counsel of choice, Backhus, from litigating his amended eighth successive Rule 3.851 motion and his state habeas petition where Backhus appeared pro bono and her representation would not have resulted in delay or prejudice.  (Doc. 17 at 1).

i. Due Process

Courts "examine procedural due process questions in two steps."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).  First, the court "asks whether there exists a liberty or property interest which has been interfered with by the [s]tate[;]" and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Id.*

Florida has established a statutory right to postconviction counsel for death-sentenced inmates for pursuing any collateral attack on their convictions and sentences. Fla. Stat. § 27.702(1) ("The capital collateral regional counsel shall represent each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed . . . .").  And the Florida Rules of Criminal Procedure reinforce this right and mandate the appointment of counsel while prohibiting self-representation in capital postconviction cases.  *See* Fla. R. Crim. P. 3.851(b)(1), (b)(4)-(6).

Relying on these state statutes and rules, Plaintiff argues that because Florida has created this procedural entitlement to postconviction counsel, the Fourteenth Amendment's guarantee of due process automatically applies to that right.  (Doc. 17 at

4).  And he asserts that considering that vested federal constitutional right, he has a right to counsel of choice where counsel of choice poses no delay, prejudice, or additional costs to the state.  (*Id*. at 4-5).

But the United States Supreme Court and the Eleventh Circuit have consistently held that there is no federal constitutional right to counsel in postconviction proceedings, including those involving death-sentenced inmates.  *See Murray v. Giarratano*, 492 U.S. 1 (1989); *Barbour v. Haley*, 471 F.3d 1222, 1227-28 (11th Cir. 2006) (collecting cases). Indeed, recognizing that postconviction review is a discretionary proceeding removed from the arduous circumstances of a criminal trial, the Supreme Court has explained that when a state provides an inmate with postconviction review, "neither the Due Process Clause nor the Equal Protection guarantee of meaningful access require[] states to provide [death-sentenced] indigents legal representation to pursue those [postconviction] claims."  *Barbour*, 471 F.3d at 1228-29 (citing *Pennsylvania v. Finley*, 481 U.S. 551(1987); *Giarratano*, 492 U.S. at 11-12).  While the federal courts recognize that states have the discretion to provide counsel for postconviction proceedings as a matter of legislative policy, that state-created policy is not constitutionally mandated.  *See Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (noting that states may choose to provide counsel at various stages of judicial review, but such provisions are not required by the Constitution).

The underlying premise of Plaintiff's due process claims is that he has a federally protected due process right to counsel of his choice in his postconviction proceedings. Even though his "qualified pro bono counsel" was ready and able to appear and accepting that her appearance would have caused "no delay or prejudice," the law simply does not support Plaintiff's premise.   It is beyond dispute that Plaintiff does not have a

20

constitutionally protected right to counsel in his postconviction proceedings.  *See Murray*, 492 U.S. at 1; *Barbour*, 471 F.3d at 1227-28.  And even though Florida has created a statutory scheme to provide counsel to him as a death-sentenced inmate, that does not automatically implicate a Fourteenth Amendment right to counsel of his choice.  On the contrary, "the Due Process Clause provides [merely] that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Nevertheless, accepting as true that Florida affords Plaintiff a state created property interest, Plaintiff received the process he was due.  Notably, the Court finds persuasive Defendants' argument on this point:

> [Plaintiff] had the opportunity to be heard at the circuit court hearing on counsel where the circuit court emphasized state-appointed counsel's decision-making authority.  He had the opportunity to appeal that decision and chose not to do so.  *Cf. Merck v. State*, 216 So. 3d 1285 (Fla. 2017).  And he had the opportunity to be heard on his emergency motion for rehearing of the Florida Supreme Court's order.  *See Link v. Wabash R. Co.*, 370 U.S. 626, 631-32 (1962).  [Plaintiff], through his unauthorized counsel of choice, had three opportunities to be heard and took just one of them.  He can hardly cry [a] due process violation based on evidence he never provided to the state courts.

(*See* Doc. 16 at 11).  Also, Plaintiff himself seemingly acknowledges in his Reply to the Defendants' Response to his Motion to Stay that a civil plaintiff's right to counsel of choice "is not absolute."  (Doc. 22 at 2; citing *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003)).  The right to "hire [a] lawyer of [one's] choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice."  *Id.* at 956.  As Defendants aptly explain:

> The State has a strong interest in assuring continuity of counsel for capital defendants and thus precluding changes after a warrant is signed except in narrow, statutorily authorized circumstances.  It has established rules and

a system to minimize counsel changes in furtherance of that objective. Whatever limited right [Plaintiff] could have to postconviction counsel of choice must give way to Florida's interest in the fair, orderly, and efficient administration of its system.

(Doc. 15 at 15).   Plaintiff, through pro bono counsel Backhus, was given an opportunity to be heard on the counsel issue in both the trial court (during the evidentiary hearing) and the Florida Supreme Court (through Backhus's motion for rehearing).   Plaintiff simply disagrees with the results, but his disagreement does not create a federal due process claim.   Thus, Plaintiff's Amended Complaint fails to state a due process claim.[6]

## ii. Equal Protection

Plaintiff also argues that Defendants violated his equal protection rights because he is being treated differently than non-capital litigants and non-indigent litigants who can retain counsel of their choice to represent them.   (Doc. 12 at 23).

"The Equal Protection Clause requires the State to treat all persons similarly situated alike."   *Glenn v. Brumby*, 663 F.3d 1312, 1315 (11th Cir. 2011).   "To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."   *Jones v.*

---

[6] Access to courts is a right grounded in several constitutional amendments, including the First and Fourteenth Amendments.  *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003); *see Barbour v. Haley*, 471 F.3d 1222, 1224 n.2 (11th Cir. 2006) (noting that the prisoners' claim that they had been denied meaningful access to the courts implicated both the First and Fourteenth Amendments).   But a difference in opinion between Plaintiff's lead counsel and second-chair counsel on what claims should be raised and in what courts does not amount to an access to courts violation

*Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)).

Here, Plaintiff has not alleged that other similarly situated individuals received more favorable treatment. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 867 (11th Cir. 2008) (concluding that the prisoner-plaintiff "failed to state an equal protection claim because he did not allege facts showing that any similarly situated prisoners received more favorable treatment"). And likely of more import, he fails to assert that Defendants' alleged discriminatory treatment was based on Plaintiff being a member of a protected class or some other constitutionally protected interest.

Also, to the extent that Plaintiff argues that he is not required to allege facts supporting that element because he is asserting a "class of one" equal protection claim, his argument is unpersuasive. Even a "class of one" equal protection claim requires some comparison to other similarly situated individuals. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("We see no reason that a plaintiff in a 'class of one' case should be subjected to a more lenient 'similarly situated' requirement than we have imposed in other contexts. Adjudging equality necessarily requires comparison, and 'class of one' plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt.").

Plaintiff seemingly argues that he was treated differently from the similarly situated plaintiffs in *Howell v. State*, 109 So. 3d 763 (Fla. 2013), and *State v. Dailey*, No. SC20-934 (Fla.).   (Doc. 17 at 11-12).   But the facts underlying Plaintiff's claim here are distinguishable from the plaintiffs in *Howell* and *Dailey*.   Indeed, *Howell* was decided before the additions of subsections (b)(4) through (b)(6) of Rule 3.851; and thus the rules governing the appointment and substitution of collateral counsel in *Howell* were not like the current rules applicable to Plaintiff.   *See In re Amends. to Fla. Rules of Jud. Admin.; The Florida Rules of Crim. Procedure; and The Fla. Rules of App. Proc.--Cap. Postconviction Rules*, 148 So. 3d 1171, 1173-74, 1177 (Fla. 2014) (directing that the amendments become effective on January 1, 2015, and advising that "the only basis on which a defendant may seek to dismiss counsel is pursuant to statute due to an actual conflict, or pursuant to rule 3.851(i) (Dismissal of Postconviction Proceedings)").   Also, as to *Dailey*, Plaintiff provides no facts showing he is similarly situated to the plaintiff in that case.   Rather, Plaintiff simply cites to a motion to withdraw filed by an attorney with the Office of the Capital Collateral Regional Counsel – Middle Region ("**CCRC**") who explained that he needed to withdraw because he no longer worked for CCRC.   *Dailey*, SC20-934.   The motion clarified that other attorneys with CCRC would remain as Dailey's counsel "along with pro bono counsel."   *Id.*   Upon review of that motion alone, the Court infers that CCRC explicitly agreed to private pro bono counsel appearing as co-counsel and that the attorneys otherwise followed the procedures outlined in Rule 3.851.   Here, however, during the trial court's proceedings on Plaintiff's amended eighth successive Rule 3.851 motion, the trial court ruled that while Backhus could appear as second-chair counsel, Harrison "would retain all decision-making authority."   (Doc. 3 at 40; Doc. 12 at

8).   And when Backus filed Plaintiff's state court habeas petition, she did so in contravention to the dictates of "lead counsel" as outlined in Rule 3.851, and Harrison, as Plaintiff's designated lead counsel, explicitly declined to adopt Backhus's filings.[7]   As such, Plaintiff has not alleged that any other similarly situated individuals were treated more favorably.  Thus, he has failed to state a plausible equal protection claim.

Accordingly, it is **ORDERED:**

1.    Defendants' Amended Motion to Dismiss (Doc. 15) is **GRANTED**.

2.    The claims against Defendants are **DISMISSED with prejudice**.

3.    Plaintiff's Emergency Motion for a Stay of Execution (Doc. 4) is **DENIED as moot**.

4.    The Clerk shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on June 6, 2025.

WENDY W. BERGER
United States District Judge

---

[7] Indeed, the Court is aware of at least one case similar to Plaintiff's state habeas case.  *See Bates v. Jones*, No. SC16-119, 2016 WL 6205332, at *1 (Fla. July 18, 2016). In *Bates*, the Florida Supreme Court granted the respondents' motion to strike because the case was filed by non-lead counsel.  The court directed counsel who filed the case to either confer with lead counsel and refile the document as co-counsel or obtain an order of substitution of counsel in the trial court.